UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

AARON RICHARD GOLUB, ESQUIRE, P.C.
and AARON RICHARD GOLUB,

Case No. 1:23-cv-10102-JSR

                              *Plaintiff*,

**NOTICE OF MOTION TO DISMISS
PLAINTIFFS' COMPLAINT
PURSUANT TO FED. R. CIV. P. 12**

-against-

TIMOTHY BLUM and BLUM

                             *Defendants*.
-----------------------------------------------------------x

**PLEASE TAKE NOTICE,** that on January 8, 2024, at 3:15pm, or as soon thereafter as counsel may be heard, Defendants Blum & Poe LLC (now known as Blum Los Angeles LLC and doing business as BLUM) and Timothy Blum will move before the Honorable Jed. S. Rakoff at 500 Pearl Street, Courtroom 14B, New York, New York 10007 for (a) an Order granting Defendants' Motion to Dismiss the Complaint filed by Plaintiffs, Aaron Richard Golub, Esquire, P.C. and Aaron Richard Golub ("Plaintiffs") pursuant to Fed. R. Civ. P. Rule 12(b)(6); and (b) such other relief as this Court may deem just and proper. Pursuant to this Court's November 21, 2023 minute entry answering papers, if any, are to be filed by Monday, December 18, 2023 and reply papers are due Wednesday January 3, 2024. Oral argument will be held on Monday January 8, 2024 at 3:15pm and the parties will jointly file a proposed case management plan by Friday, January 5, 2024.

Dated: New York, New York
       November 27, 2023

                                         Respectfully Submitted,

                                         */s/ Vanessa Destime*
                                         Vanessa Destime
                                         Angelo G. Labate
                                         EISNER LLP
                                         152 W. 57th Street, 48th Floor
                                         New York, New York 10019
                                         Phone: (646) 876-2600

Fax: (212) 600-5020
vdestime@eisnerlaw.com
alabate@eisnerlaw.com

-and-

Zachary Elsea
(*pro hac vice* forthcoming)
EISNER LLP
433 North Camden Drive, 4th Floor
Beverly Hills, CA 90210
Phone: (310) 855-3200
Fax: (310) 855-3201
zelsea@eisnerlaw.com

*Attorneys for Defendants BLUM and
Timothy Blum*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

AARON RICHARD GOLUB, ESQUIRE, P.C.
and AARON RICHARD GOLUB,          Case No. 1:23-cv-10102-JSR

                         *Plaintiff*,

            -against-

TIMOTHY BLUM and BLUM

                         *Defendants*.

------------------------------------------------------------x

## DEFENDANT BLUM & POE, LLC'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS

---

[1] Defendant "Blum & Poe LLC" was renamed to Blum Los Angeles, LLC d/b/a Blum in October 2023 (hereinafter "Blum").

# <u>TABLE OF CONTENTS</u>

<u>**Page**</u>

I.      Preliminary Statement.................................................................................................3

II.     Factual Background ....................................................................................................6

III.    Legal Standard ............................................................................................................8

IV.     Plaintiffs' Fee Dispute Is Subject To Mandatory Arbitration And Must Be
        Dismissed..................................................................................................................10

V.      In The Alternative, The Complaint Fails To State A Claim Under Rule 12(b)(6) ............12

        A.      Plaintiffs Fail to State a Cause of Action for Breach of Contract..........................12

        B.      Plaintiffs Claim for Quantum Meruit is Factually Implausible ...........................14

        C.      Plaintiffs' Claims Should be Dismissed with Prejudice ........................................18

VI.     CONCLUSION.........................................................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2007)................................................................................8, 9, 14

*Borrero v. Ruppert Hous. Co.,*
    2009 WL 1748060 (S.D.N.Y. June 19, 2009) ...................................................3, 10

*Brookhaven Horn. Coal. v. Solomon,*
    583 F.2d 584 (2d Cir. 1978)................................................................................5, 13

*Flanagan Law, PLLC v. Perno,*
    70 Misc. 3d 1201(A), (N.Y. Sup. Ct. NY Cnty. Dec. 18, 2020)..........................5, 9

*French & Casey LLP v. Design Quest N.Y., Ltd.,*
    67 Misc. 3d 1217(A) (N.Y. Sup. Ct. 2020)................................................................10

*Fulbright & Juworski, LLP v. Carucci,*
    63 A.D.3d 487 (N.Y. App. Div. 2009) ...........................................................16, 17

*Glover v. Colliers Int'l NY, LLC,*
    No. 13-CV-8843, 2014 WL 5410016 (S.D.N.Y. Oct. 24, 2014)...........................3, 10

*Grewal v. Cuneo Gilbert & LaDuca LLP,*
    2018 WL 4682013 (S.D.N.Y. Sept. 28, 2018)................................................................9

*Kerner & Kerner v. Dunham,*
    46 A.D.3d 372 (2007) ................................................................................3, 10

*Kling v. World Health Org.,*
    532 F. Supp. 3d 141 (S.D.N.Y. 2021)................................................................18

*Kowalchuk v. Stroup,*
    873 N. Y.S.2d 43 (N. Y. App. Div. 2009) ...........................................................12

*Register.com, Inc. v. Verio, Inc.,*
    356 F.3d 393 (2d Cir. 2004)................................................................................9

*Revson v. Cinque & Cinque, P.C.,*
    221 F.3d 59 (2d Cir. 2000)................................................................................9, 17

*Shaw v. Manufacturers Hanover Trust Co.,*
    499 N.E.2d 172 (NY 1986)................................................................................14

*Sullivan v. North Babylon Union Free School Distr.*,
   2016 WL 11673810 (E.D.N.Y. Mar. 21, 2016) ................................................................18

**Other Authorities**

22 NYCRR 137.1 ...........................................................................................................11, 14

22 NYCRR 137.2 .............................................................................................................3, 10

22 NYCRR 137.6 ..................................................................................................................10

22 NYCRR 1400.2 ................................................................................................................13

22 NYCRR 1215.1 .....................................................................................................5, 9, 12, 13

Fed. R. Civ. P. 12(b)(6) ....................................................................................................3, 12

N.Y. R. of Prof. Conduct 1.5(d)(4) ....................................................................................5, 11

Defendants respectfully submits this memorandum of law in support of its motion to dismiss the Complaint (the "Motion") in this action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Rule 12").

## I.     Preliminary Statement

This is an outrageous and frivolous lawsuit by an unethical attorney demanding an astronomical sum for allegedly referring Defendants' former business partner to *different* lawyers two years ago.

As a matter of New York law, Plaintiffs' claim is subject to mandatory arbitration before the New York State Fee Dispute Resolution Program under Part 137 of the Rules of the Chief Administrative Judge, as described further below. *See* 22 NYCRR 137.2 ("Arbitration under this Part shall be mandatory for an attorney if requested by a client."). Dismissal pursuant to Rule 12(b)(6) is therefore appropriate. *See, e.g.*, *Glover v. Colliers Int'l NY, LLC*, No. 13-CV-8843, 2014 WL 5410016, at *1 n. 1 (S.D.N.Y. Oct. 24, 2014) (granting dismissal where agreement required arbitration); *Borrero v. Ruppert Hous. Co.*, 2009 WL 1748060, at *1 (S.D.N.Y. June 19, 2009) (same); *see also Kerner & Kerner v. Dunham*, 46 A.D.3d 372, 372 (2007) ("The complaint was properly dismissed for failure to allege that, as claimed by plaintiff in opposition to the motion, the dispute involves more than $50,000 and therefore is not covered by the Fee Dispute Resolution Program.").

In the alternative, in the unlikely event the Court does not find Plaintiffs' claims to be subject to mandatory arbitration, the Complaint must be dismissed for failure to state a claim under Rule 12(b)(6). Because Plaintiffs affirmatively allege that other lawyers performed all of the relevant legal services (Compl. ¶¶ 16, 18), and because Plaintiffs fail to allege the existence

of any permissible fee agreement with Defendants—written or otherwise—Plaintiffs' breach of contract and quantum meruit claims fail as a matter of law.

Plaintiff Aaron Richard Golub, Esquire, PC is a Manhattan-based law firm and Plaintiff Aaron Richard Golub is its principal. Compl. ¶¶ 1-2. Defendant Blum Los Angeles LLC (f/k/a Blum & Poe LLC) operates an art gallery in Los Angeles, and Defendant Tim Blum is its proprietor. *Id*. ¶¶ 3-4.

The gravamen of the Complaint is that Defendants' former business partner, Jeff Poe ("Jeff"), consulted Plaintiffs regarding tax liability issues in December 2021 (*Id*. ¶ 9), Plaintiffs referred Jeff to *different* attorneys—Art Rosen and Katie Quinn of McDermott Will & Emery—who Jeff retained in December 2021 (*Id*. ¶¶ 15-16), and *those* attorneys "successfully defended Defendants against the NYSDTF [New York State Department of Taxation and Finance]." *Id*. ¶ 18.

Incredibly, Plaintiffs now claim they are owed "a legal retainer [in] the sum of $150,000" for simply making that introduction. *Id*. ¶ 13. This is despite the fact that, contrary to New York state law and attorney ethical rules, (1) the parties never entered into a written agreement, (2) there is no allegation in the Complaint regarding the financial terms of any alleged attorney-client relationship, (3) there is no allegation that any time records were kept by Plaintiffs during the two-year period during which "services" were allegedly rendered, and (4) Plaintiffs concede that despite supposedly being retained by Defendants in December 2021, they never invoiced Defendants for any services rendered. *Id*., ¶ 20.

Plaintiffs' bizarre and implausible shakedown attempt fails as a matter of law. Plaintiffs' breach of contract claim must be dismissed because it fails on its own terms to comply with both New York's requirements for the formation of an attorney-client contract, and that, irrespective

4

of those requirements, the Complaint fails to allege the material terms of any alleged contract as a matter of hornbook law. First, a contract involving the attorney-client relationship must be in the form of a "written letter of engagement or [] a written retainer agreement explaining the scope of legal services, the fees to be charged, billing practices to be followed, and the right to arbitrate a dispute." *Flanagan Law, PLLC v. Perno*, 70 Misc. 3d 1201(A), at *2 (N.Y. Sup. Ct. NY Cnty. Dec. 18, 2020) (citing *Seth Rubenstein, P.C. v. Ganea*, 41 AD3d 54, 60 (2d Dept 2007)); 22 NYCRR § 1215.1. As explained above, Plaintiffs admittedly met *none* of these requirements to show the formation of an attorney-client fee agreement under New York law.

Separately, as a matter of basic contract law, the Complaint is devoid of any allegations regarding the alleged material terms of the purported legal services contract. *See Brookhaven Horn. Coal. v. Solomon*, 583 F.2d 584, 593 (2d Cir. 1978). Plaintiffs simply allege that they told Defendants' former business partner that Plaintiffs' "retainer would be $150,000." Compl. ¶ 13. But $150,000 for what? The Complaint does not say. Non-refundable legal retainer fees are prohibited as a matter of New York law. N.Y. R. of Prof. Conduct 1.5(d)(4). And Plaintiffs affirmatively allege it was *other* attorneys who performed the legal services with respect to the gallery's alleged tax liability. *Id*. ¶ 18. Plaintiffs breach of contract claim therefore fails as a matter of law.

Plaintiffs' quantum meruit claim fares no better. Again, Plaintiffs allege that it was attorneys Art Rosen and Katie Quinn, who are not affiliated with Plaintiff, who performed the relevant legal services. *Id*. ¶¶ 16-18. And the quantum meruit claim is further deficient as it is factually flawed as to each element of the claim – including most importantly that the services allegedly provided are contradicted by other allegations within the Complaint and there are no

facts pleaded which would allow for the determination of the reasonable value of the few services allegedly provided.

II.     **Factual Background**[2]

  Defendant Blum is a California limited liability company operating an art gallery. Compl. ¶ 3. Plaintiff Aaron Richard Golub ("Golub") is an attorney "duly licensed to practice law in the City, County, and State of New York." *Id.* ¶ 2. Golub is the principal of Plaintiff Aaron Richard Golub, Esquire, P.C., ("ARGPC"), a law firm "duly organized and existing under the laws of the State of New York." *Id.* ¶¶ 1-2.

  Blum was founded in 1994 by Defendant Timothy Blum ("Blum") and Jeff Poe ("Poe") in Santa Monica, California. *Id.* ¶ 7. In August 2023, after decades of successful operations together, Blum and Poe decided to part ways and Poe's exit from the company was publicly announced around the same time. *Id.* Shortly after this development was announced, Plaintiffs began to make demands for payment for legal services allegedly rendered two years prior. *Id.* ¶¶ 21-23. Plaintiffs contend that in August 2023, Jeff, after accepting legal services from Plaintiffs without Blum or Tim's knowledge, advised Plaintiffs that Blum would not pay unpaid legal fees. Compl. ¶¶ 19, 21. Plaintiff Golub then demanded Defendant Tim meet with him at an arts fair in Paris, France. On October 18, 2023, Golub alleges Tim advised him that he would not meet in Paris, despite allegedly agreeing to do so. *Id.* ¶ 22. That same day, Plaintiffs sent a demand letter advising that Blum owed Plaintiffs unpaid legal fees and that Jeff "knew that there was a fee to be charged and Mr. Golub told him that it would be no less than $50,000." Elsea Decl. Ex. A. The demand letter demanded within two days a "satisfactory proposal to pay Mr. Golub's full

---

[2] For the purposes of this Motion, facts are taken from the Complaint and assumed to be true. Blum reserves the right to challenge any fact asserted in the Complaint at a future date.

legal fee" or else Plaintiffs would "immediately commence a lawsuit." *Id.* Two days later

Plaintiffs filed a lawsuit in New York State court alleging breach of contract and quantum meruit

in the amount of $150,000. *See generally* Compl.

 Plaintiffs claim for unpaid attorneys' fees is based upon allegations that Golub helped

guide Blum through sales tax issues in connection with audits being conducted by the New York

State Department of Taxation and Finance ("NYSDTF"). *Id.* ¶ 9. Allegedly, Jeff contacted Golub

to utilize his expertise in the area of "common carrier" jurisprudence as it applies to tax issues in

New York. *Id.* Plaintiffs allege that Golub introduced Jeff to an accountant, David Lifson, who

specialized in sales tax accounting. *Id.* ¶ 10. Plaintiffs allege that they provided "case law and a

number of points that [Blum] could use in its negotiations with NYSDTF." *Id.* ¶ 14. Plaintiffs did

not themselves negotiate with NYSDTF and instead referred Blum to Art Rosen ("Rosen") and

Katie Quinn ("Quinn") of McDermott, Will & Emery ("McDermott") to favorably resolve the

issue. *Id.* ¶ 15. Blum decided to retain Rosen and Quinn in December 2021. *Id.* ¶ 16. Plaintiffs

then allege that Jeff continued to consult with Plaintiffs after the retention of Rosen and Quinn.

*Id.* ¶ 17. Plaintiffs also allege that they continued consulting with Quinn when she moved to

Jones Walker LLP, but only cite one instance of receiving an email update from Quinn apprising

about the status of her negotiations with NYSDTF. *Id.* The tax matter was favorably resolved for

Blum at a much smaller sum than originally contemplated by NYSDTF. *Id.* ¶ 18.

 Plaintiffs claim credit for the favorable resolution of the tax issues obtained by Rosen and

Quinn for Blum. *Id.* ¶ 18. Plaintiffs alleged contributions are, without Plaintiffs: (1) Jeff and

Blum would never have met or retained McDermott or Jones Walker; (2) Lifson and Jeff would

not have been advised that the NYSDTF's conclusions were contrary to case law; and (3) the

multimillion-dollar sales tax liability would not have been resolved for a *de minimis* sum. *Id.*

Plaintiffs only alleged active contributions, however, are providing some case law and points for negation, referring the matter to other attorneys, and "consulting" with the other attorneys actually negotiating toward a resolution of the matter. *Id.* Despite the claim of actively consulting with McDermott and Jones Walker, Plaintiffs also allege that they were shocked to learn that Blum's "Director of Finance, Amy Garofano, had been dealing with [Blum's] sales tax liability and was communicating with [Rosen] and [Quinn], who were recommended" to Blum by Plaintiffs. *See id.* ¶ 19. Plaintiffs' demand letter makes clear that he was not working directly with Rosen and Quinn, and, in fact, complained that Plaintiffs were led to believe Mr. Golub "was going to have your gallery litigate this matter against the State of New York." Elsea Decl. Ex. A. Plaintiffs then wrote that litigation would no longer be involved as "the matter is now apparently settled." *Id.*

Blum never received an invoice or request for compensation for the legal fees allegedly provided. Compl. ¶ 20. Additionally, Plaintiffs do not allege that they ever told Defendants that they were providing the alleged services – only Poe, a non-party to this action was allegedly given such notice. *Id.* ¶ 19. No written retainer agreement or engagement letter was ever executed by Defendants or Poe and no such written document was ever sent to Defendants.

## III.   <u>Legal Standard</u>

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2007). A plaintiff must "plead[] factual content that allows the court to draw reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While a court "must accept as true all of the allegations contained in the complaint" this command is "inapplicable to legal conclusions…[t]hreadbare recitals of the elements of a cause of action,

supported by mere conclusory statements…[or] legal conclusion[s] couched as factual allegation." *Id.*

Under New York law, the elements of a breach of contract claim are: (1) the existence of a contract between the parties; (2) performance of plaintiff's obligations under that contract; (3) breach of defendant's obligations under that contract; and (4) damages to the plaintiff caused by that breach. *Grewal v. Cuneo Gilbert & LaDuca LLP*, 2018 WL 4682013, at *4 (S.D.N.Y. Sept. 28, 2018) (*citing Diesel Props S.r.l. v. Greystone Bus. Credit II LLC*, 631 F.3d 42, 52 (2d Cir. 2011). "To form a valid contract under New York law there must be an offer, acceptance, consideration, mutual assent and intent to be bound." *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 427 (2d Cir. 2004) (citation omitted). A contract involving the attorney-client relationship must be in the form of a "written letter of engagement or [] a written retainer agreement explaining the scope of legal services, the fees to be charged, billing practices to be followed, and the right to arbitrate a dispute." *Flanagan Law, PLLC v. Perno*, 70 Misc. 3d 1201(A), at *2 (Sup. Ct. NY Cnty. Dec. 18, 2020) (*citing Seth Rubenstein, P.C. v. Ganea*, 41 AD3d 54, 60 (2d Dept 2007)); 22 NYCRR § 1215.1.

Under New York law, to state a valid claim for quantum meruit a plaintiff must establish "(1) the performance of services in good faith, (2) the acceptance of the services by the person to whom they are rendered, (3) an expectation of compensation therefor, and (4) the reasonable value of the services." *Revson v. Cinque & Cinque, P.C.*, 221 F.3d 59, 69 (2d Cir. 2000). Further, under New York law, "an attorney is precluded from showing the value of his services by introducing in evidence an agreement that he is as a matter of law ethically barred from enforcing." *Id.* at 70.

**IV.** **Plaintiffs' Fee Dispute Is Subject To Mandatory Arbitration And Must Be**
      **Dismissed**

Attorney-client fee disputes in New York are subject to mandatory arbitration with the

New York State Fee Dispute Resolution Program. *See* 22 NYCRR 137.2 ("Arbitration under this

Part shall be mandatory for an attorney if requested by a client."). Before initiating any fee

dispute litigation against a client, an attorney must serve the client with a Notice of Client's

Right to Arbitrate or else the case must be dismissed. 22 NYCRR 137.6; *see also French &*

*Casey LLP v. Design Quest N.Y., Ltd.*, 67 Misc. 3d 1217(A) (N.Y. Sup. Ct. 2020) ("the

requirement imposed by Part 137 is not that attorneys must establish in the action that they had

properly served the right-to-arbitrate notice (and that the client did not elect to arbitrate), but that

from the outset attorneys 'must allege in the complaint' that they provided the requisite notice.

(22 NYCRR § 137.6 [b].) . . . In these circumstances, plaintiff's second action must be dismissed

for failure to satisfy § 137.6 (b).")

Plaintiffs did not plead that they (and did not in fact) serve Defendants with a right-to-

arbitrate notice, and their Complaint must be dismissed on that ground alone. *See id.*

Even setting that requirement aside, Plaintiffs' complaint must be dismissed because it is

subject to mandatory arbitration. *See, e.g., Glover v. Colliers Int'l NY, LLC*, No. 13-CV-8843,

2014 WL 5410016, at *1 n. 1 (S.D.N.Y. Oct. 24, 2014) (granting dismissal where agreement

required arbitration); *Borrero v. Ruppert Hous. Co.*, 2009 WL 1748060, at *1 (S.D.N.Y. June 19,

2009) (same); *see also Kerner & Kerner v. Dunham*, 46 A.D.3d 372, 372 (2007) ("The

complaint was properly dismissed for failure to allege that, as claimed by plaintiff in opposition

to the motion, the dispute involves more than $50,000 and therefore is not covered by the Fee

Dispute Resolution Program.").

Plaintiffs allege that they are exempted from mandatory arbitration because the amount in dispute allegedly exceeds $50,000. Compl. ¶ 6; 22 NYCRR 137.1(b) (mandatory arbitration does not apply to "amounts in dispute involving a sum of less than $1,000 or more than $50,000"). Plaintiffs argue that their allegation that the "legal retainer for legal services . . . would be $150,000" exempts them from arbitration. *Id*., ¶ 13.  But Plaintiffs' sham pleading fails for two independent reasons.

First, Plaintiffs' counsel sent Defendants a letter dated October 18, 2023 alleging that "The entire time that Mr. Golub provided services to your gallery, Jeff [Poe] knew that there was a fee to be charged and Mr. Golub told him it would be no less than **$50,000.**" Elsea Decl., Ex. A (emphasis added). Only 6 days later, this sum magically tripled to $150,000, in a blatant and sham attempt to plead around the mandatory arbitration requirement. The Court should therefore ignore this later-filed sham pleading.

Second, Plaintiffs do not allege they performed over $50,000 worth of legal services (nor could they plausibly do so). Plaintiffs allege that they demanded a $150,000 retainer. Compl., ¶ 13. But non-refundable legal retainer fees are prohibited as a matter of New York law. N.Y. R. of Prof. Conduct 1.5(d)(4). Plaintiffs do not otherwise allege the reasonable valuable of their alleged services—which amount only to allegedly referring Defendants to a different law firm. Compl., ¶¶ 16-18. Plaintiffs therefore fail to plausibly allege that they rendered over $50,000 worth of legal services to Defendants.

Accordingly, based on the allegations as pleaded, Plaintiffs' claim is subject to mandatory arbitration before the New York State Fee Dispute Resolution Program.[3]

---

[3] There is also no time limit on Defendants' right to demand arbitration because Plaintiffs did not serve Defendants with a Notice of Client's Right to Arbitrate as required by Section 137.6.

**V.**     **In The Alternative, The Complaint Fails To State A Claim Under Rule 12(b)(6)**

Plaintiffs' Complaint fails to state any cause of action under New York law because the claims for breach of contract and quantum meruit related to a vague and undefined attorney retainer agreement are both legally and factually deficient. First, Plaintiffs' breach of contract claim cannot be maintained because any contract involving the attorney-client relationship must be in writing and provide very detailed engagement information – all of which are missing from the Complaint. Second, Plaintiffs' claim for quantum meruit cannot be maintained as Plaintiffs cannot meet their burden to factually establish all of the elements of this claim.

**A.**     **Plaintiffs Fail to State a Cause of Action for Breach of Contract**

The breach of contract claim must be dismissed with prejudice simply because Plaintiffs do not anywhere in the Complaint allege that the parties executed a written engagement letter or retainer agreement. Plaintiffs have not – and cannot – establish this essential element of their breach of contract claim because 22 NYCRR § 1215.1 requires a written engagement letter or retainer agreement containing an "explanation of the scope of the legal services to be provided," an "explanation of attorney's fees to be charged, expenses and billing practices," and "shall provide that the client may have a right to arbitrate fee disputes under Part 137 of this Title." 22 NYCRR § 1215.1 (*see supra*, § IV). New York case law provides that where a signed writing does not provide a client this information there can be no breach of contract claim. *Flanagan Law*, 70 Misc. 3d 1201(A), at *2.

Even were a signed writing not mandated by law, the Complaint also fails to allege any of the elements required for a contract for legal services. Mutual assent, an essential element of a breach of contract claim, can only be established where there is a "meeting of the minds" on all "essential terms." *Kowalchuk v. Stroup*, 873 N. Y.S.2d 43, 46 (N. Y. App. Div. 2009). Further,

"[i]f essential terms of an agreement are omitted or are phrased in too indefinite a manner, no legally enforceable contract will result." *See Brookhaven Horn. Coal. v. Solomon*, 583 F.2d 584, 593 (2d Cir. 1978). None of the material terms required by 22 NYCRR § 1215.1 for a contract for legal services are present in the Complaint, demonstrating there could have been no "meeting of the minds" on all "essential terms." For example, the Complaint does not explain what billing practices were to govern the alleged contract – and even explicitly admits that no invoices were ever provided to Defendants. *See* Compl. ¶ 20. The Complaint is devoid of any allegation, beyond conclusory assertions that a $150,000 retainer was agreed to, as to how fees applied to the alleged retainer would be earned, such as hourly work, contingency fee, or a flat rate.[4] Further, the Complaint fails to explain the scope of the legal services provided by Plaintiffs, including what Plaintiffs unique role was in the purported relationship between McDermott, the alleged clients, and Plaintiffs. There is also no indication that Plaintiffs provided any indication that fee disputes of a certain value could be referred to Part 137 arbitration – despite the original fee demanded falling squarely within the mandatory arbitration range. *See* Elsea Decl. Ex. A ("The entire time that Mr. Golub provided services to your gallery, Jeff knew that there was a fee

---

[4] Further, the Complaint does not allege that Plaintiffs provided the Statement of Client's Rights and Responsibilities (The "Statement"), as required by 22 NYCRR 1400.2. The Statement provides that a client is "entitled to fully understand the proposed rates and retainer fee" and "how [a client] will be asked to pay legal fees and expenses" including "how the retainer, if any, will be spent." *Id.* Further, the Statement provides that an "attorney must return to [a client] any balance of the retainer that has not been used." There are no allegations, beyond conclusory statements that the "ARGPC's retainer would have been $150,000.00," that support that Plaintiffs earned any part of the retainer – and in fact Plaintiffs even admit that they never sent any invoices to the client to draw from this retainer. *See* Compl. ¶¶ 20, 30. As indicated above, *supra* n.3, documentary evidence in Plaintiffs' possession also negates the claimed amount of the alleged retainer. *See* Elsea Decl. Ex. A. Plaintiffs have therefore not adequately or plausibly alleged damages, an essential element of the claim, further necessitating dismissal with prejudice.

to be charged and Mr. Golub told him that it would be no less than $50,000); *see also* Part 137, Fee Dispute Resolution Program, Rule 137.1(b)(2).

Lastly, to maintain a breach action – were there a written contract – Plaintiffs would have had to fully perform, and their allegations indicate they were not truly involved with the tax matter representation. For instance, despite alleging that Plaintiffs were in regular contact and consulting with Rosen and Quinn, Plaintiffs allege that they did not know that Defendant's "Director of Finance, Amy Garofano, had been dealing with BPLLC's potential sales tax liabilities and was communicating with AR and KQ, who were recommended to JP and BPLLC by ARG." Compl. ¶ 19.iv. Such contradictory allegations of purported performance do not meet *Iqbal*'s plausibility standard. 556 U.S. at 678.

At bottom, Plaintiffs have utterly failed to plead any of the essential elements of a contract for the provision of legal services and as no amendment can remedy these patent defects, the claim should be dismissed with prejudice.

### B.     Plaintiffs Claim for Quantum Meruit is Factually Implausible

While a quantum meruit claim involving the provision of legal services can survive where no written engagement exists, Plaintiffs' claim fails to meet all of the elements of this claim and must also be dismissed. *Flanagan Law*, 70 Misc. 3d 1201(A), at *2 (*citing Miller v. Nadler*, 60 A.D.3d 499, 500 (NY App. Div. 1st Dept. 2009)). Additionally, alleged retainer arrangements are construed in a light most favorable to the client and "courts as a matter of public policy give particular scrutiny to fee arrangements between attorneys and clients, casting the burden on attorneys…to show that the contracts are fair, reasonable, and fully known and understood by their clients." *Shaw v. Manufacturers Hanover Trust Co.*, 499 N.E.2d 172, 176 (NY 1986) (Court of Appeals reversing an award of quantum meruit). As Plaintiffs' allegations

regarding the services and fees are nonsensical and self-defeating, Plaintiffs have not and cannot

meet their pleading burden with respect to the quantum meruit claim.

*First*, Plaintiffs' Complaint does not establish the performance of services in good faith

as a full reading of the Complaint directly contradicts that Plaintiffs provided the services

claimed. Plaintiffs allege that they had many conversations and communications with Jeff,

Rosen, Quinn, and Lifson, however, they were apparently in the dark that Rosen and Quinn were

retained by Amy Garofano to resolve the NYSDTF matter. Compl. ¶ 19. It simply is not

plausible that Plaintiffs were fully retained and engaged to help resolve the NYSDTF matter,

including by consulting with Rosen and Quinn, but also had no clue that Rosen and Quinn were

working with Blum to resolve the case outside of litigation. Plaintiffs demand letter further

demonstrates the nonsensical nature of the claimed provision of services, as Plaintiffs make clear

the thrust of their issue is that Golub believed he was going to litigate the matter, but that was no

longer possible since the "matter is now apparently settled." Elsea Decl. Ex. A. Plaintiffs cannot

have consulted with Rosen and Quinn but also have not known they were retained to resolve the

NYSDTF matter without litigation. A reading of the full Complaint reveals Plaintiffs' quantum

meruit claim is simply implausible on its face.

*Second*, Plaintiffs' Complaint establishes that the services were accepted by a former

member of Blum's predecessor, a non-party to this action, with no corresponding allegation that

any of the Defendants themselves accepted legal services.  Plaintiffs only make conclusory

allegations that Jeff was a co-owner, co-founder, and co-principal of Blum or that he was

requesting legal services on Blum's behalf – with no corresponding allegation as to his authority

to bind Blum in anyway. These allegations are in stark contrast to the manner in which

McDermott was allegedly retained by Blum itself. Compl. ¶ 16.  By their own admission

Plaintiffs seemingly never put Blum on notice that they were acting as their lawyers as no invoices were ever sent to Blum and both Tim and Blum were unaware of the relationship between Plaintiffs and Jeff. *Id.* ¶ 19-20. Strangely, even though he is the only one seemingly aware of the unwritten arrangements for legal services, Jeff is not a party to this action. As the Complaint makes clear that none of the defendants themselves accepted the legal services allegedly performed the Complaint must be dismissed. *Fulbright & Juworski, LLP v. Carucci*, 63 A.D.3d 487 (N.Y. App. Div. 2009) (dismissing quantum meruit where there was "no allegations that [] Carucci accepted services from plaintiff").

*Third,* Plaintiffs cannot establish that they expected the compensation claimed as the Complaint does not attempt to outline the compensation scheme involved in the alleged representation and documentary evidence in Plaintiff's possession clearly indicates Golub was already paid for the referral services claimed. The Complaint makes repeated reference to a $150,000 retainer that Jeff allegedly agreed to on behalf of Blum. Compl. ¶¶ 13, 27, 30, 33-35. Yet, the Complaint is devoid of any allegations outlining the details of this retainer, such as the scope of the engagement for this alleged retainer or how the hourly rates or fees would be earned and charged against this retainer. *See generally id.* Plaintiffs readily admit they never sent Blum an invoice charging Blum for any services rendered and as an attorney and law firm they each should know the value of a $150,000 retainer does not become the property of an attorney without actually billing for $150,000 worth of services. Further, Plaintiffs' Complaint makes no effort to distinguish between the results McDermott achieved for Blum and its provision of services, alleging that it is owed its retainer because "but for" their involvement the matter would not be resolved. *Id.* ¶ 19. However, in framing their Complaint they have pleaded themselves into a corner as failing to differentiate the work done by Plaintiffs and McDermott in allegedly

resolving the matter demonstrates the expectation of $150,000 in compensation is highly implausible. *See Fulbright & Juworski,* 63 A.D.3d 487 (rejecting quantum meruit claim that did not differentiate the amounts owed by different clients). The entitlement to compensation is made all the more implausible as Plaintiffs allegations, when stripped bare of conclusory assertions of a retainer agreement, boil down to a referral arrangement regarding the NYSDTF matter.

*Fourth*, Plaintiffs' Complaint does not allege the "reasonable value" of any services because there is no basis alleged for establishing the value of the services allegedly rendered. As a matter of law, Plaintiffs' claim of a $150,000 retainer cannot serve as the basis for the value of the services in the Complaint because Second Circuit case law establishes that an attorney cannot rely upon an unenforceable contract for the value of the alleged services. *Revson*, 221 F.3d at 69. Other than the retainer agreement, Plaintiffs do not provide any allegations in the Complaint establishing the value of the legal services – especially, as described above, the allegations around the services provided are either too vague or are directly contradicted by other facts in the Complaint. Plaintiffs do not allege any scope of legal services to be provided or a scheme for calculating fees as they are earned (hourly rates, contingency fees, or flat rates) to establish the value of the services. Further, the reasonable value of the services provided is undermined by documentary evidence demonstrating that the actual contemplated engagement involving litigation against NYSDTF never occurred because of the satisfactory settlement by McDermott. Elsea Decl. Ex. A. Putting aside the allegations involving the referral and retainer, all that is left are vague allegations of phone calls, email communications, and case law research.[5] Plaintiffs

---

[5] Plaintiffs' conclusory allegation that the $150,000 retainer "was commensurate with the elimination or favorable settlement of [Blum's] multi-million New York sales tax liabilities," also cannot serve as the basis for providing the reasonable value of the limited services allegedly

admit that they never generated invoices to Blum for the provision of these alleged services. As such, Plaintiffs have utterly failed to allege any means in the Complaint of determining the "reasonable value" of the vague services allegedly provided.

Accordingly, as Plaintiffs have not pleaded facts to plausibly establish all of the elements of a quantum meruit claim, the Complaint must be dismissed with prejudice.

### C.      Plaintiffs' Claims Should be Dismissed with Prejudice

While leave is often granted to amend after first dismissal, leave should be denied here as further pleading will not cure the defects described herein. *See Kling v. World Health Org.*, 532 F. Supp. 3d 141, 154 (S.D.N.Y. 2021) (dismissal with prejudice is appropriate when "the flaws in pleading are incurable") (internal quotations omitted) (*citing Cuoco v. Moritsugu*, 222 F. 3d 99, 112 (2d Cir. 2000) (affirming dismissal without leave to replead because "[t]he problem with [Plaintiff's] causes of action is substantive; better pleading will not cure it"); *see also Sullivan v. North Babylon Union Free School Distr.*, 2016 WL 11673810, at *9 (E.D.N.Y. Mar. 21, 2016) ("Although the Court's general practice is to grant leave to amend the complaint when granting a motion to dismiss, the district court has the discretion to deny leave to amend where there is no indication from a liberal reading of the complaint that a valid claim might be stated") (internal quotations omitted).

### VI.      CONCLUSION

For the forgoing reasons, Defendant Blum respectfully requests that this Court dismiss the Complaint with prejudice, as Plaintiffs' claims are subject to mandatory arbitration and, in

---

provided by Plaintiffs themselves. Plaintiffs did not negotiate with the NYSDTF and, as discussed above, Plaintiffs did not directly work with McDermott or Jackson Walker to eliminate the tax liability. Instead, Plaintiffs thought they would serve as litigation counsel which they now cannot do since McDermott fully resolved the matter favorably for Blum. *See* Elsea Decl. Ex. A.

the alternative, Plaintiffs have failed to state any claim for which relief can be granted and

further pleading will not cure the Complaint's patent defects.

Dated:  New York, New York
        November 27, 2023

                                                Respectfully Submitted,

                                                /s/ *Angelo G. Labate*
                                                Vanessa Destime
                                                Angelo G. Labate
                                                EISNER LLP
                                                152 W. 57th Street, 48th Floor
                                                New York, New York 10019
                                                Phone: (646) 876-2600
                                                Fax: (212) 600-5020
                                                vdestime@eisnerlaw.com
                                                alabate@eisnerlaw.com

                                                *Attorneys for Defendant Blum*